Ronald P. Mysliwiec, Esq. (RM 8926)
Law Offices of Ronald P. Mysliwiec
Attorneys for Plaintiff
530 Third Street
Brooklyn, New York 11215
(718) 768-4581
rpm@rpmlawny.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE DUBOV,

                 Plaintiff,

          -against-                        1:18 CV 03854 (PAE) (GWG)

JALEEL HASAN LEWIS, FREEMAN YOUNG PERRY, EMRI CAPITAL LLC, NEW YORK MED GROUP NYC LLC, EQUITY CAPITAL PARTNERS LLC and EQUITY CAPITAL PARTNERS OF NY LLC,

                Defendants.


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS


Dated:  August 8, 2018                      LAW OFFICES OF RONALD P. MYSLIWIEC
                                                          530 Third Street
                                                          Brooklyn, New York 11215
                                                          (718) 768-4581
                                                          Attorneys for Plaintiff Christine Dubov

## TABLE OF CONTENTS

| | Page |
|---|---|
| THE PLEADINGS AND FACTS BEFORE THIS COURT | 1 |
| ARGUMENT | 5 |
| A. Defendants' Counterclaim For Return Of The $186,500 Must Be Dismissed Under Any Interpretation Of FRCP 8(a)(2) | 6 |
| B. Defendants' Counterclaim for $250,000 In Professional Services Must Be Dismissed | 7 |
|     1. Quasi-contract Under New York Law | 8 |
|     2. Defendants Have Tried To Mix And Match New York's Quasi-Contract Causes Of Action | 9 |
| CONCLUSION | 12 |

## TABLE OF AUTHORITIES

**CASES**                                                                                       **Page**

Ashcroft v. Iqbal, 556 U.S. 662 (2009)..........................................................  5, 6, 8

Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007).................  5, 6, 8

Conley v. Gibson, 355 U.S. 41 (1957) .......................................................  5, 8

DerOhannesian v. City of Albany, 110 A.D.3d 1288,
    975 N.Y.S.2d 188 (3d Dep't 2013)..................................................  10

Estate of George L. Goth v. Tremble, 59 A.D.3d 839,
    873 N.Y.S.2d 364 (3d Dep't 2009).................................................  10

Hindsight Solutions, LLC v. Citigroup Inc.,
    53 F. Supp. 3d 747 (S.D.N.Y. 2014)...............................................  10, 11

Liebowitz v. Cornell University,
    584 F.3d 487 (2d Cir. 2009)...........................................................  8, 9, 10, 11

Lundy v. Catholic Health System of Long Island,
    711 F.3d 106 (2d Cir. 2013)...........................................................  7

Tasini v. AOL, Inc., 851 F. Supp. 2d 734 (S.D.N.Y. 2012).......................  10

Ronald P. Mysliwiec, Esq. (RM 8926)
Law Offices of Ronald P. Mysliwiec
Attorneys for Plaintiff
530 Third Street
Brooklyn, New York 11215
(718) 768-4581
rpm@rpmlawny.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE DUBOV,

          Plaintiff,

-against-

JALEEL HASAN LEWIS, FREEMAN YOUNG PERRY, EMRI CAPITAL LLC, NEW YORK MED GROUP NYC LLC, EQUITY CAPITAL PARTNERS LLC and EQUITY CAPITAL PARTNERS OF NY LLC,

          Defendants.

1:18 CV 03854 (PAE) (GWG)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

Plaintiff Christine Dubov ("Dubov") submits this Memorandum of Law in support of her motion to dismiss defendants' counterclaims.

<u>THE PLEADINGS AND FACTS BEFORE THIS COURT</u>

Plaintiff commenced this action on or about May 1, 2018, against defendants: Jaleel Hasan Lewis ("Lewis"); Freeman Young Perry ("Perry") and four LLCs which appear to have

been financial conduits or entities that otherwise facilitated Lewis' and Perry's swindling of $325,769,38 from plaintiff on or just prior to July 10, 2012. [1]

In support of her claims, inter alia, of fraud, breach of fiduciary duty, conversion and aiding and abetting, plaintiff filed a 29-page complaint, unusually rich in factual detail. She did this for two reasons. First, the types of wrongdoing alleged by plaintiff – especially fraud and and fraud-related claims – must be pleaded with particularity under FRCP Rule 9. Second, plaintiff is in possession of extremely rare (for this type of lawsuit) objective evidence supporting her claims against the defendants in this case, viz., a 90-page text message transcript, detailing, word-for-word, the communications between plaintiff and defendant Lewis from December 5, 2013, to April 6, 2018. Plaintiff has attached that transcript to her Amended Complaint and relies upon it heavily in the text of that pleading.

That transcript substantially eliminates the one-person's-word-against-another's strategy favored by defendants in fraud-based cases, when defendants can produce no hard evidence of their own in support of their defense. This is just such a case.

On May 25, 2018, plaintiff amended her Complaint, making only cosmetic changes.

On July 30, 2018, defendants filed their Answer and Counterclaims. Defendants took a polar-opposite approach to pleading than the one taken by plaintiff. Their pleading consisted of approximately 102 bare denials of the allegations made in plaintiff's Amended Complaint, combined with 37 "kitchen-sink" affirmative defenses and two counterclaims.

---

[1] In the Amended Complaint this amount is erroneously claimed as $325,269.38. The defendants also reported this amount erroneously in documents created and attached as exhibit 2 to the Amended Complaint submitted herewith. The correct number, a small difference of $500, is determined by the actual amounts in plaintiff's wire transfers, attached as exhibit 3 to that Amended Complaint.

Defendants chose not to plead any "facts", as such, only some legal conclusions in connection with their affirmative defenses. Defendants' strategy, understandably, is to reveal as little as possible, given the overwhelming case against them supported, as it is by the prolific, objective evidence set forth in plaintiff's text message transcript.

This is a motion to dismiss defendants' two counterclaims. Given the absence of any factual allegations in defendants' Answer and Counterclaims, it is not possible for this Court to apply the standard rule that, in deciding motions like this one, the allegations in the complaining party's pleading (in this case defendants' counterclaims) are to be accepted as true and all reasonable inferences must be drawn in such party's favor. Such inability results entirely from defendants' strategic election to remain silent.

There is much that plaintiff does not know about the underlying facts and circumstances of this case. That information is solely in defendants' possession and defendants have chosen a strategy of silence. Nonetheless, the pleadings in this case leave the Court with only one coherent narrative: that presented in plaintiff's Amended Complaint. A brief recapitulation of the most important part of that narrative follows.

- Plaintiff is a 68-yer old widow of 12 years and a person with absolutely no experience in matters of business or finance. (Amended Complaint, ¶¶ 2 and 26.)

- On or about July 10, 2012, plaintiff entered into an amended "Financial Commodity Enhancement Agreement" with one or more of the defendants whereby she was promised interest calculated at the rate of 20 percent every 90 days (i.e., 80 percent annually) on Brazilian government bonds to be purchased for her account. Her return was expressly guaranteed by defendant Equity Capital Partners LLC. On this basis, plaintiff invested $325,769.38 with one or more of the defendants. (Id., ¶¶14-21, and 25.)

- On or about November 15, 2013, plaintiff was cursorily informed by defendant Lewis that "the Brazilian bonds fell through', that he and defendant Perry were "ironing out" her "physical investment" and that they had formed another unidentified company in connection therewith. (Id., ¶ 24.)

3

- On or about February 26, 2014, defendant Lewis met face-to-face with plaintiff after her repeated requests. Plaintiff had never met with either defendant Lewis or Perry before that date. At that time defendant Lewis informed plaintiff that her money had been invested in an enterprise which he only vaguely identified as "Medco International." Defendant Lewis further told plaintiff that there was an "insurance policy" protecting her investment in Medco International. (Id., ¶¶ 28-29.) Plaintiff was perplexed and even shocked at that news but did not know how to extricate herself from the situation.

- To this day, plaintiff has no knowledge as to whether her money was ever used to invest in "Medco International" or any enterprise. As far as she knows her money simply went into the pockets of defendants Lewis and Perry. Over the years since she entrusted her money to the defendants she has asked, scores of times, for documentation that would substantiate the "investment" which defendant Lewis said they had made for her. Every one of those requests was ignored. As a result, plaintiff cannot be said to have ratified any alternative investment vehicle other than the original commitment to invest her funds in Brazilian bonds, an investment which was never made. (Id., ¶ 36-37.)

- Beginning on or about May 6, 2016, defendant Lewis advised plaintiff that he was seeking a loan from a third-party to return plaintiff's investment principal. (Id., ¶¶ 44-45.)

- On February 22, 2018, plaintiff was still inquiring of defendant Lewis about the loan referred to by him almost two years earlier. She wrote him a text message. "I was under the impression that securing this loan would mean I would be receiving my principal back and dissolving this relationship." Defendant Lewis promptly texted plaintiff back. "'Yes that is the case the loan is in the final stages, it is currently under review with the lender." (Id., ¶ 46.)

- Plaintiff never received the proceeds of any loan and her investment principal was never returned, something promised by defendant Lewis on 13 separate occasions beginning on or about May 6, 2016. (Id. at ¶¶ 80-82.)

- On or About April 7, 2018, after it became clear to plaintiff that no loan proceeds were ever going to be forthcoming, she demanded, through a letter from her counsel, the return of her full "investment principal". (Id. at ¶ 108.)

- Plaintiff never received a response to that letter.

- Over the course of their six-year relationship, defendants irregularly, on 30 separate occasions, remitted $186,500 to plaintiff, an annualized return of approximately 9.5 percent on her capital. They did so only after reducing plaintiff to the indignity of begging for the money. These funds were insufficient to provide a

4

living to plaintiff and she made this clear to defendants. (Amended Complaint ¶¶ 50-64.) When plaintiff entrusted these defendants her money in 2012, it was upon their written "guarantee" that her money would provide 20 percent per quarter, an 80 percent annual return.

- Defendants are now counterclaiming against plaintiff for return of the $186,500 on grounds not stated. Further, they audaciously counterclaim against her in the amount of $250,000 for the benefit of their "professional services". There are no specific professional services alleged. Even if there were, no benefit therefrom is alleged, nor could it be.
-

## ARGUMENT

Any attempt to analyze defendants' two counterclaims against plaintiff must begin with FRCP Rule 8(a)(2).

> "A pleading that states a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief...."

In two of the most important decisions it has issued in decades regarding the Federal Rules of Civil Procedure, the United States Supreme Court wrote at length on the requirements of FRCP Rule 8(a)(2). Those decisions, of course, were <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544 (2007); and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

Those decisions are generally agreed to have substantially increased the responsibility of a party seeking to plead a claim in federal court – as defendants seek to do in their counterclaims -- over the standard of responsibility set 60 years ago in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).

> "While a complaint attacked by a <u>Rule 12(b)(6)</u> motion to dismiss does not need detailed factual allegations [citation omitted], a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, [citation omitted]."

5

> "Rule 8(a)(2) still requires a 'showing rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair' notice' of the nature of the claim, but also 'grounds' on which the claim rests."

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, at 555 and 555, n.3.

> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice....While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."

Ashcroft v. Iqbal, 556 U.S. 662, at 678-79.

### A. Defendants' Counterclaim For Return Of The $186,500 Must Be Dismissed Under Any Interpretation Of FRCP 8(a)(2).

In their Answer and Counterclaims, defendants allege that since they accepted plaintiff's $326,769.38 more than six years ago, they have made payments to plaintiff totaling $186,500. Plaintiff does not dispute that allegation. She pleaded it herself in her Amended Complaint. (Amended Complaint ¶ 65.) What those payments constituted, e.g., interest or a return on capital investment remains a mystery to this day. As alleged in plaintiff's Amended Complaint, defendants have consistently refused to characterize the nature of these payments or to provide any documentation to plaintiff which would allow her to characterize them – to the taxing authorities among others -- in spite of her scores of written requests that they do so. (Importantly, however, in the nearly two-year-long discussion between plaintiff and defendant Lewis regarding his purported efforts to secure a loan to buy out her investment principal, the 90-page text message transcript reveals that he never once claimed that the $186,500 paid to her had been a partial repayment of that investment principal.)

6

An accurate characterization of that $186,500 need not be determined for purposes of this motion. The only thing that must be decided on this motion is whether these defendants have sufficiently stated a claim for the return to them of that $186,500. They have not.

Neither the holdings of <u>Twombly</u> nor <u>Iqbal</u> need be invoked in reaching such conclusion. The simple language of FRCP Rule 8(a)(2) is enough. That rule states clearly that the pleader is required to state a claim in a fashion "showing that the pleader is entitled to relief...." In their counterclaim defendants make no showing of any kind – not even one couched in formulaic language – that they are entitled to a return of the $186,500. No claim or cause of action is identified by name or title. No elements of any cause of action cognizable in tort, contract, property or statue, are pleaded, even in conclusory fashion. Only a bald demand for relief is made.

Such counterclaim gives no adequate notice to the plaintiff as to the nature of this aspect of defendants' counterclaim. It doesn't inform either plaintiff or this Court what plaintiff purportedly did wrong to justify the remedy sought.

> "Under Federal Rule of Civil Procedure 8(a)(2), a 'plausible claim contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [citations omitted.]"

<u>Lundy v. Catholic Health System of Long Island</u>, 711 F.3d 106 at 114 (2d Cir. 2013).

Thus, defendants' counterclaim for $186,500 must be dismissed.

B. <u>Defendants' Counterclaim for $250,000 In Professional Services Must Be Dismissed.</u>

In addition to their fatally flawed "counterclaim" for the return of $186,500, defendants have attempted to plead a second counterclaim, seeking recovery of the

7

purported value of "professional services" they allegedly provided to plaintiff between 2012 and 2018. This counterclaim, too, must be dismissed for failure to state a claim.

That counterclaim is frivolous in the extreme. Although plaintiff has attached a 90-page transcript of the text messages between her and defendant Lewis from December 2012 through April 2018, defendants cannot point the Court to a single piece of professional advice given plaintiff over this period, let alone advice that is worth $250,000. Further such amount would constitute approximately 76 percent of the $325,769 which plaintiff invested with defendants in 2012 and would be 134 percent more than the total of $186,500 she has received from defendants.

However, no detailed discussion of the frivolity of its merits is needed to dismiss defendants' second counterclaim. It must be dismissed under the authority of Twombly and Iqbal.

As with their first counterclaim, defendants fail to label it in a fashion that would aid this Court or the plaintiff to determine the nature of the claim. However, in pleading their second counterclaim defendants have stated enough at least to allow the reader to understand that it is intended as some form of quasi-contract claim. Beyond that, however, nothing is certain.

1. Quasi-contract Under New York Law.

New York law historically recognizes two types of quasi-contract claims: *quantum meruit* and unjust enrichment. In alleging their second counterclaim, defendants have inter-mixed the two types of claims, dropping out the elements of each claim which are the most troublesome to them even at the pleading stage.

8

This "cherry picking" of elements would require dismissal of defendants' second counterclaim even under Conley v. Gibson, supra. The modern pleading standards of Twombly and Iqbal remove any doubt that dismissal is mandated.

The Second Circuit opinion in Leibowitz v. Cornell University, 584 F.3d 487 (2d Cir. 2009), is highly instructive.

> "'In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of services by the person to whom they are rendered, (3) an expectation of compensation therefore, and the reasonable value of the services.' [Citations omitted.]
>
> \* \* \* \*
>
> A claimant seeking relief under a theory of unjust enrichment in New York must demonstrate (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution. [citations omitted.]"

584 F.3d 487 at 509.

2. **Defendants Have Tried To Mix And Match New York's Quasi-Contract Causes Of Action.**

The most obvious thing about defendants' second attempt to state a counterclaim is that it fails to plead the necessary elements required of either a *quantum meruit* or an unjust enrichment claim.

9

With respect to a potential *quantum meruit* counterclaim, defendants have failed to plead, as required under New York law, that defendants had an "expectation of payment" for any purported professional services they allege they provided. [2]

With respect to unjust enrichment, defendants failed to plead, even formulaicly, the very first element of such claim under New York law: that plaintiff benefitted from any alleged professional services provided by defendants between 2012 and 2018. That is completely understandable for reasons already discussed.

Thus, even under the low (now superseded) pleading standards of <u>Conley v. Gibson</u>, <u>supra</u>, defendants' second counterclaim would have to be dismissed. *A fortiori* that counterclaim must be dismissed under the modern pleading standards articulated in <u>Twombly</u> and <u>Iqbal</u>.

---

[2] While there is a slight difference in the elements of these two claims, they are frequently analyzed together. <u>Liebowitz v. Cornell University</u>, 584 F.3d 487, 509 n. 9 (2d Cir. 2009). One of the recurring reasons that claims for unjust enrichment and *quantum meruit* have been analyzed together is that the New York courts, state and federal, have found that "reasonable expectation of payment" is an element of both varieties of quasi-contract claims: express in the context of a *quantum meruit* claim; implied in an unjust enrichment claim, where "principles of equity and good conscience" must compel the restitution remedy sought in ay unjust enrichment claim.

> "Further, in the absence of any proof that plaintiff had a reasonable basis for believing she would receive compensation...it cannot be said that principles of equity require any restitution."

<u>Liebowitz</u>, <u>supra</u>, at 509. <u>Accord</u>, <u>Tasini v. AOL, Inc.</u>, 851 F. Supp. 2d 734, 740 (S.D.N.Y. 2012); <u>DerOhannesian v. City of Albany</u>, 110 A.D.3d 1288, 1291-92, 975 N.Y.S.2d 188, 193 (3d Dep't 2013); and <u>Estate of George L. Goth v. Tremble</u>, 59 A.D.3d 839, at 841-42, 873 N.Y.S.2d 364 at 367-68 (3d Dep't 2009).

Two decisions in this district are particularly useful in aiding the evaluation of defendants' quasi-contract counterclaim here: <u>Tasini v. AOL, Inc.</u>, 851 F. Supp. 2d 734 (S.D.N.Y. 2012); and <u>Hindsight Solutions, LLC v. Citigroup Inc.</u>, 53 F. Supp. 3d 747 (S.D.N.Y. 2014). <u>Tasini</u> was a decision rendered upon a motion to dismiss an unjust enrichment claim. <u>Hindsight Solutions</u> was a decisions rendered, after a bench trial on both types of quasi-contract claim. Both decisions were rendered by Koeltl, J.

In <u>Tasini</u> the court acknowledged the controlling authority of <u>Twombly</u> and <u>Iqbal</u>.

> "'A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' [citing <u>Iqbal</u>.]"

851 F. Supp. 2d 734 at 737. In that case the court, following the lead of the Second Circuit in <u>Liebowitz v. Cornell University</u>, <u>supra</u>, granted the motion to dismiss the plaintiff's claim for unjust enrichment because no expectation of compensation was adequately pleaded by plaintiff under the standard set by the U.S. Supreme Court.

> "Therefore, under New York law, a plaintiff must plead some expectation of compensation that was denied in order to recover under a theory of unjust enrichment. The Complaint fails to do so and the claim for unjust enrichment must therefore be dismissed."

851 F. Supp 734 at 741.

In <u>Hindsight Solutions</u>, <u>supra</u>, the same district court first denied plaintiff's unjust enrichment claim, <u>inter alia</u>, because "there is no evidence that Citi enjoyed any software savings" because of Hindsight's work. 53 F. Supp. 3d 747 at 775. The court additionally denied claimant's *quantum meruit* claim. In that connection the court elucidated the type of evidence it would require to demonstrate "expectation of payment".

11

> "The plaintiff never demonstrated a reasonable expectation of payment separate from the Agreement because the plaintiff never requested a separate work order, never made a contemporaneous request for payment or even discussed compensation for the work at the time it was done...."

53 F. Supp. 3d 747 at 796.

In <u>Hindsight Solutions</u>, as here, defendants failed to plead that they ever made a contemporaneous request for payment or even discussed with plaintiff compensation for their purported professional services at the time those services were allegedly rendered.

Under the authority of <u>Liebowitz v. Cornell University</u>, <u>supra</u>, such failure dooms either version of defendants' quasi-contract counterclaim: *quantum meruit* or unjust enrichment.

Defendants' quasi-contract counterclaim, whether couched as unjust enrichment or *quantum* meruit, must now be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, plaintiff Christine Dubov respectfully request that this Court dismiss defendants' counterclaims with prejudice.

Dated: Brooklyn, New York
August 8, 2018

LAW OFFICES OF RONALD P. MYSLIWIEC

Ronald P. Mysliwiec
530 Third Street
Brooklyn, New York 11215
(718)768-4581
Attorneys for Plaintiff

12