USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/6/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

CHRISTINE DUBOV,

                      Plaintiff,

-v-

JALEEL HASAN LEWIS, FREEMAN YOUNG PERRY,
EMRI CAPITAL LLC, NEW YORK MED GROUP NYC
LLC, EQUITY CAPITAL PARTNERS LLC, and EQUITY
CAPITAL PARTNERS OF NY LLC,

                      Defendants.

18 Civ. 3854 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Christine Dubov ("Dubov") brings this action against Jaleel Hasan Lewis ("Lewis"), Freeman Young Perry ("Perry"), and four LLCs—EMRI Capital LLC, New York Med Group LLC, Equity Capital Partners LLC, and Equity Capital Partners of NY LLC—that she believes to be under the control of Lewis and Perry. Dubov alleges fraud, breach of fiduciary duty, conversion, and aiding and abetting in connection with Lewis and Perry's actions between 2013 and 2018 concerning money that she gave them to invest. Defendants in their answer brought collective counterclaims against Dubov for quantum meruit and unjust enrichment for the value of professional services they provided over the relevant period. Defendants also sought a declaratory judgment to the effect that defendants did not breach any agreement with Dubov.

    Dubov now moves to dismiss defendants' counterclaims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion and dismisses defendants' counterclaims and request for a declaratory judgment in their entirety.

1

## I. Background

### A. Facts[1]

Dubov alleges that in June 2012 she entered into an investment agreement with ECP LLC titled "Financial Commodity Enhancement Agreement" that contemplated an initial investment of $310,000. AC ¶ 14; *see also id.* Ex. 1. In July 2012, she alleges, she entered into a second agreement (the "FCEA") with defendants that she alleges amended the first, and was identical in all respects, except for an increased investment amount of $325,269.38. *See id.* ¶¶ 16, 18, *see also id.* Ex. 2 (FCEA). The FCEA was allegedly executed by Lewis and Perry. It identified Lewis as "Senior Vice President" of ECP LLC. AC ¶ 17; *see also* FCEA at 2. Dubov alleges that, in July 2012, she in fact transferred $325,269.38 to ECP LLC in two payments. AC ¶¶ 19–20. The FCEA allegedly committed her money to an investment only in "Brazilian Long Term Notes (Government bonds)." *Id.* ¶ 25, *see also* FCEA at 1. By its terms, the FCEA provided for "a total of 20% return per 90 days of each" bond. It further provided that "[t]he client has the right to receive from ECP [LLC] an interest payment and whatever has been earned[] after 90 days of receipt of the client's initial investment." FCEA at 1. "Once the interest payments begin, the client will receive the interest payments on a monthly basis. . . . The client's principle [sic] investment is fully guaranteed by Equity Capital Partners LLC and is secured by a Brazilian legal counsel." *Id.* The FCEA stated that "[t]he term of this investment shall be for one year with the opportunity to renew the investment every year for a period of five years." *Id.*

Dubov alleges that, by November 1, 2013, she had received four payments totaling $21,000. All were from EMRI, an entity about which she knew nothing. AC ¶ 24. However,

---

[1] This account is drawn from the amended complaint, Dkt. 16 ("AC"), and the first amended answer, Dkt. 36 ("FAA"). For the purposes of resolving this motion to dismiss, all factual allegations in the first amended answer are presumed true. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

2

she alleges, in February 2014, Lewis, after repeated attempts to meet, told her that the entirety of her money had been invested in "Medco International." AC ¶ 29. Between January 2014 and April 2018, Dubov texted Lewis hundreds of times requesting money. Dubov there detailed for Lewis her financial hardship, including eviction from her apartment, credit card bills and interest payments, and moving expenses to California. *See id.* ¶¶ 50–59.

Defendants claim that Dubov was a sophisticated investor and represented such to them. FAA at 16. She also allegedly represented that "she was a wealthy person with investable assets." *Id.* Defendants allege that Dubov's investments were inherently risky, that she knew or should have known they were risky, and that her investment declined in value due to risks known to her. *Id.* at 17. Defendants claim that they acted reasonably and responsibly towards Dubov, gave her prudent advice, and rendered competent services. *Id.* They allege that the entreaties from Dubov for money were caused by "personal matters" with which defendants were not under any obligation to assist. *Id.* at 18.

Between 2013 and 2018, defendants allege, they paid Dubov a total of at least $186,500 at her request. FAA at 18. Dubov acknowledges receipt of this sum. *See* Dkt. 41 at 21.

### B. Procedural History

On April 30, 2018, Dubov filed an initial complaint. Dkt. 1. On May 5, 2018, Dubov filed the Amended Complaint ("AC"). Dkt. 16. On July 30, 2018, defendants answered the AC with counterclaims. Dkt. 29. On August 9, 2018, Dubov moved to dismiss defendants' counterclaims. Dkt. 31. On August 30, 2018, defendants filed the First Amended Answer with Counterclaims ("FAA"). Dkt. 36. On September 19, 2018, Dubov filed a motion to dismiss the FAA, Dkt. 38, a memorandum of law, Dkt. 41 ("Pl. Mem."), and a declaration in support, Dkt. 40 (Declaration of Ronald P. Mysliwiec). On October 4, 2018, defendants filed a memorandum

3

of law in opposition. Dkt. 49 ("Def. Mem."). On October 10, 2018, Dubov replied. Dkt. 50 ("Pl. Reply").

Also on October 10, 2018, this Court held an initial pretrial conference and set a schedule for fact discovery. *See* Dkt. 51. On January 15, 2019, the Court extended that schedule on the consent of both parties. Dkt. 66.

## II.     Applicable Legal Standard

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Taupita Inv., Ltd. v. Leung*, No. 14 Civ. 9739 (PAE), 2017 WL 3600422, at *6 (S.D.N.Y. Aug. 17, 2017) (quoting *Orientview Techs. LLC v. Seven for All Mankind, LLC*, No. 13 Civ. 0538 (PAE), 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch*, 699 F.3d at 145. That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. Discussion

Dubov moves to dismiss all three of defendants' counterclaims: for a declaratory judgment, for quantum meruit, and for unjust enrichment. The Court addresses these in turn.

### A. Declaratory Judgment

"It is within the broad discretion of the trial court whether to exercise declaratory jurisdiction." *Camofi Master LDC v. College Partnership, Inc.*, 452 F. Supp. 2d. 462, 480 (S.D.N.Y. 2006) (citing *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 505 (2d Cir. 1968)). A court must entertain a declaratory judgment action "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).

Defendants seek "a declaratory judgment that they have not breached any alleged agreement . . . [and] that they are not obligated to make payment to [Dubov] pursuant to any alleged agreement." FAA at 19 ¶¶ 28–29. This claim is the mirror image of Dubov's first claim for breach of contract, in which she requests payments from defendants. AC at 17–18. Neither party has cited a case in which a declaratory judgment counterclaim was brought that did no more than mirror an extant claim in the same federal case. The Court holds that in such a situation, both factors favor declining to exercise declaratory jurisdiction.

First, the declaratory judgment counterclaim will not serve a useful purpose. It will do nothing to clarify or settle the legal relations at issue here. Plaintiff Dubov's original claims in the case, however they are ultimately resolved, will likely do so. But the declaratory judgment counterclaim does no more than track plaintiff's contract claims. It is not addressed to a discrete issue relating to any party's rights or responsibilities that has the potential to go unaddressed.

5

*See Camofi Master LDC*, 452 F. Supp. 2d at 480 ("[A] declaratory judgment would not further clarify legal relations among the parties; the determination sought—that [a plaintiff] breached the [contract]—will already be addressed in the breach of contract claim."); *see also Bodum USA, Inc. v. A Top New Casting Inc.*, No. 16 C 2916, 2016 WL 4440258, at *2 (N.D. Ill. Aug. 23, 2016) (granting motion to dismiss declaratory judgment counterclaim where "[defendant's] counterclaim essentially presents nothing more than the flip side of [plaintiff]'s claims. The counterclaim adds nothing to the case beyond the issues that [plaintiff]'s claims call upon the Court to adjudicate").

Second, "no cloud of uncertainty hangs over" defendants here, beyond, of course, the as-yet uncertain outcome of plaintiff Dubov's pending claims. *Camofi Master LDC*, 452 F. Supp. 2d at 480. Defendants have "not been left awaiting the initiation of legal proceedings while damages accrue." *Id.* (citing *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990) ("The intent [of a declaratory judgment] is to allow a party to be free from the whim of its opponent in deciding when to resolve the legal dispute between them."); *Gotham Ins. Co. v. Plant Main. Serv. Co.*, No. 94 Civ. 1461 (WK), 1994 WL 714302, at *3 (S.D.N.Y. Dec. 22, 1994) (finding declaratory judgment inappropriate where a party has already invoked its right to a coercive remedy)). "The question of the parties' obligations to one another will all be resolved in the context of [the original] claims." *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburg v. Int'l Wire Grp., Inc.*, No. 02 Civ. 10338 (SAS), 2003 WL 21277114, at*5 (S.D.N.Y. June 2, 2003)). A declaratory judgment will therefore afford no helpful relief not already brought in the original proceeding.

The Court accordingly declines to exercise declaratory jurisdiction and grants Dubov's motion to dismiss defendants' declaratory judgment counterclaim.

## B. Quantum Meruit and Unjust Enrichment

Dubov next moves to dismiss defendants' counterclaims for quantum meruit and unjust enrichment under Rule 12(b)(6). She argues, first, that defendants have impermissibly conflated the two claims under New York law, Pl. Mem. at 15, and, second, that defendants have not pled facts sufficient to support the elements of either, *id.* at 16–23.

Dubov's first argument fails. In fact, courts in New York often treat quantum meruit and unjust enrichment together as a common quasi contract claim. "Applying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citations omitted). Courts have noted that "quantum meruit and unjust enrichment are not separate causes of action," as "unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992). In fact, the case on which Dubov relies in claiming improper conflation, Pl. Mem. at 15 (citing *Leibowitz v. Cornell University*, 584 F.3d 487 (2d Cir. 2009)), noted the same thing, *see Leibowitz*, 584 F.3d at 509 n.9 ("'[A]pplying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim.'" (quoting *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175)). The Court therefore does not fault defendants for these overlapping counterclaims.

The existence of an agreement between Dubov and defendants also does not prevent defendants from seeking quasi contract relief. The Second Circuit has set out the pertinent New York law on this point:

7

> "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment. . . . Briefly stated, a quasi contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved . . . .
>
> [. . .] It is impermissible [. . .] to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (emphasis removed) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388–89 (1987)). Dubov argues that defendants have failed to specifically deny the existence or validity of the FCEA or adequately plead an alternative, non-contractual framework under which the parties did business. *See* Pl. Mem. at 14. Defendants respond that they are entitled to plead contract and quasi contract in the alternative. Def. Mem. at 7.

As a strictly procedural point, defendants are correct that, on the pleadings, a defendant is entitled alternatively to pursue contractual and quasi contractual relief. "Federal courts have construed [the language of Rule 8(d)] to permit plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim." *Knudson v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) (internal citations and quotation marks omitted); *see also Altaire Pharm., Inc. v. Rose Stone Enters.*, No. 13 Civ. 4373 (JFB) (WDW), 2013 WL 6235862, at *7 (E.D.N.Y. 2013) (collecting cases). At this preliminary stage, defendants are therefore not inherently precluded from bringing counterclaims for quasi contract alongside contractual defenses.

8

That precept, however, does not determine whether the counterclaims here are adequately pled. For the reasons that follow, the Court holds, with Dubov, that defendants have failed to plead facts adequate to support their counterclaims for quantum meruit and unjust enrichment.

### 1. **Quantum Meruit**

Under New York law, a plaintiff seeking recovery in quantum meruit must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175; *see also* Pl. Mem. at 15; Def. Mem. at 6. Defendants' pleadings as to these elements are patently inadequate, requiring dismissal of their quantum meruit counterclaim.

As to services provided and accepted, defendants plead only that "Plaintiff alleges that Defendants rendered to Plaintiff investment advice and investment services in connection with Plaintiff's investment(s)," "Defendants rendered to Plaintiff prudent advice," "Defendants rendered to Plaintiff competent services," FAA at 17 ¶¶ 11, 17–18, "Defendants provided to Plaintiff professional services between 2013 and 2018 including the performance of investment services and the rendering of investment advice," *id.* 19 ¶ 32, and "Plaintiff accepted the services," *id.* 20 ¶ 38. Defendants do not allege what amount, if any, Dubov invested with defendants, nor any specifics as to such advice or services. Such "vague and conclusory allegations regarding what services they provided . . . fail[] to state a claim for *quantum meruit*." *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 535 (E.D.N.Y. 2011). Defendants counter by attempting to incorporate facts pled by Dubov in her AC. *See* Def. Mem. at 7–8. But defendants cannot rely on facts pled by plaintiff that they simultaneously dispute. *Compare* Def. Mem. at 7–8 (citing AC ¶¶ 29, 41), *with* FAA at 4 ¶ 29, 5

¶ 41 (denying those allegations). Defendants' counterclaims must, on their own terms, allege facts sufficient to plead a claim. They have not done so.

Defendants plead with slightly greater specificity the reasonable value of their services. As to expectation, they allege simply that "Defendants had an expectation of payment for the professional services they provided to Plaintiff," that they "are in the business of, *inter alia*, providing investment advice and investment services to clients in exchange for compensation," FAA at 19 ¶ 34–35, and that "Defendants discussed with Plaintiff the matter of compensation for Defendants' services orally and in writing," *id.* 20 ¶ 37. But defendants do not allege with any greater specificity what these oral and written representations were. As to the value of services, they allege, without any indication of how this sum was reached, that "[t]he reasonable value of the services provided by Defendants to Plaintiff is an amount exceeding $250,000.00 and to be determined at trial." *Id.* at 20 ¶ 39. As noted by Dubov, defendants do not "say whether that amount was established using an hourly rate . . ., a percentage of assets under management . . ., a commission on profit earned, or a percentage of the [amount] plaintiff received." Pl. Reply at 7. "[G]iven [defendants'] failure to adequately document the services they allegedly performed for defendants or, assuming that performance of such services could be documented, establish the reasonable value of those services," they have failed to adequately plead a claim for quantum meruit. *Singerman v. Reyes*, 659 N.Y.S.2d 762, 763 (1st Dept. 1997) (affirming dismissal of quantum meruit claim).

The Court therefore dismisses defendants' quantum meruit counterclaim.

2. **Unjust Enrichment**

"Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the

10

defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001). In support of such a claim here, defendants allege that they "paid to Plaintiff not less than $186,500.00 between 2013 and 2018," FAA at 18 ¶ 22, "were and are not obligated by contract or otherwise to make such payments to Plaintiff," *id.* ¶ 25, and that "Plaintiff was enriched by Defendants' rendering to her of professional services the reasonable value of which exceeds $250,000," *id.* at 21 ¶ 50. Therefore, defendants allege, "[i]t is against equity and good conscience to permit Plaintiff to retain the full benefit received (and loss avoided) as a result of efforts expended by Defendants for Plaintiff's benefit and on Plaintiff's behalf." *Id.* at 21 ¶ 51. Because defendants plead inadequate facts to support that Dubov's alleged enrichment was at their expense, or circumstances from which to infer that Dubov is obliged to return the $186,500 to defendants, their claim for unjust enrichment must be dismissed.

As a preliminary matter, the Court notes that defendants have neither pled nor conceded that Dubov invested money with them. *See, e.g.*, FAA at 3 ¶¶ 19–20 (denying that plaintiff Dubov transferred them the $325,769.38). Their allegation that "[b]ut for the professional services provided by Defendants to Plaintiff, the financial performance of Plaintiff's investments would have been worse," *id.* at 20 ¶ 41, therefore is factually unsupported.

Accordingly, the only proper subject of defendants' unjust enrichment claim is the $186,500 that, all agree, defendants provided to Dubov. *See* Pl. Mem. at 21 ("[B]oth sides admit defendants paid [$186,500] to plaintiff Dubov from 2012 to April 2018."). On Dubov's version of the facts, of course, this money was a partial repayment of her investment. While defendants do not concede that point, they also have not pled a version of events under which they are entitled to return of the money in equity and good conscience. As Dubov rightly notes, "[e]ven

11

if [defendants] gifted the $186,500 to plaintiff, that fact would not entitle them to a refund." Pl. Mem. at 23. Given defendants' failure, outlined above, to adequately plead services provided or a concrete expectation of payment, they have also failed to plead that their provision of $186,500 to Dubov was in any way unjust. Under the scarce and barely coherent facts pled by defendants, they provided Dubov vague investment advice and professional services, somehow valued at $250,000, while spontaneously giving her $186,500 over a number of years, from which they now seek a refund. Defendants have not articulated a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

The Court therefore dismisses defendants' unjust enrichment counterclaim.[2]

## CONCLUSION

For the foregoing reasons, the Court grants Dubov's motion to dismiss defendants' counterclaims with prejudice. The Clerk of Court is respectfully requested to terminate the motion pending at Dkt. 38.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 6, 2019
New York, New York

---

[2] The Court denies defendants' request for leave to amend their FAA. *See* Def. Mem. at 14. First, defendants have already amended their answer once in response to Dubov's first motion to dismiss. *See* Dkts. 29 (original answer), 31 (original motion to dismiss), 36 (FAA). Defendants' second answer remains far from the mark. Second, defendants appear to seek leave only to "make clear that they do not admit the substance of Plaintiff's allegations, or the contents or authenticity of the exhibits to the Complaint." Def. Mem. at 14. Because the Court, for purposes of this motion, has not found that defendants ever admitted Dubov's allegations, defendants need not amend anew to clarify this point.